**FEDERAL TRADE COMMISSION**

v.

**J. E. LONNING, President, and Kellogg Company, a corporation, Appellants.**

**No. 75–1176.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 23, 1976.

Decided June 24, 1976.

Edwin S. Rockefeller, Washington, D. C., with whom Richard Haddad, Washington, D. C., was on the brief, for appellants.

Denis E. Hynes, Atty., F.T.C., Washington, D. C., for appellee. Gerald Harwood, Asst. Gen. Counsel, F.T.C., and Karl H. Buschmann, Atty., F.T.C., Washington, D. C., were on the brief for appellee.

Before MacKINNON and ROBB, Circuit Judges, and BRODERICK,* United States District Judge for the Eastern District of Pennsylvania.

BRODERICK, District Judge:

This is an appeal by J. F. Lonning and Kellogg Company (Kellogg)[1] from an order of the district court dated January 3, 1975, granting enforcement of two specifications

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

of a subpoena *duces tecum* issued by the Federal Trade Commission (FTC) in an administrative proceeding entitled *In the Matter of Kellogg Company, et al.* The district court ordered that Kellogg appear before a duly designated representative of the FTC upon not less than five days notice to testify and produce the documents requested in specifications I.10 and II.10 of the subpoena *duces tecum* issued by the Commission on February 14, 1973. Kellogg contends that the district court should have denied enforcement of the subpoena *duces tecum* because the documents sought by the FTC contain confidential "trade secrets" which are subject to discovery through an agency subpoena only upon a showing by the agency of relevance and immediate need. Kellogg contends that there can be no finding of immediate need until consideration is given as to whether the less sensitive substitute information offered by Kellogg meets the asserted needs of the FTC. Kellogg contends that neither the district court nor the Administrative Law Judge considered whether the substitute documents offered meet the needs of the FTC and that therefore the requirement of a finding of immediate need has not been met. Kellogg further contends that even if the district court did not err in ordering enforcement of the agency subpoena, the protective order issued by the Administrative Law Judge does not adequately protect Kellogg's trade secrets that the district court abused its discretion in ordering disclosure without a more restrictive protective order.

The Federal Trade Commission is an administrative agency of the United States and is authorized by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, to prohibit unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce. Kellogg is a Delaware corporation with its principal place of business located in Battle Creek, Michigan and is the largest producer of ready-to-eat cereals in the United States.

1. All references herein to Kellogg include J. E. Lonning, President of Kellogg.

The present controversy arises out of an administrative proceeding pending before the FTC. On April 26, 1972, the FTC issued a complaint alleging that Kellogg, along with the other three leading manufacturers of ready-to-eat cereals, General Mills, General Foods, and Quaker Oats, have engaged in certain conduct and practices which violate Section 5 of the Federal Trade Commission Act.[2] The complaint alleges that Kellogg, along with the three other major producers of ready-to-eat cereals have a "shared monopoly" in the ready-to-eat cereal markets.[3] The admittedly novel complaint alleges *inter alia*: that respondents have introduced into the market a profusion of ready-to-eat cereal brands; that these cereals are promoted by intensive advertising aimed primarily at children, which advertising conceals the true nature of these cereals; that the respondents produce "basically similar" ready-to-eat cereals which are artificially differentiated by emphasizing and exaggerating trivial variations, which practices result in high barriers to entry into the ready-to-eat cereal market. The complaint further alleges various unfair methods of competition in advertising and product promotion, including allegations that the advertising is false and misleading; that Kellogg's program of shelf-space allocation controls the exposure of breakfast food products; that the respondents have made numerous acquisitions the effect of which have been to eliminate competition in the ready-to-eat cereal market and which have enhanced the shared monopoly structure of the ready-to-eat cereal market. Finally the complaint alleges that the respondents, collectively and individually, have exercised monopoly power in the ready-to-eat cereal market by refusing to engage in price competition or other forms of consumer directed promotions. The complaint alleges that these acts and practices on the part of the respondents have resulted in artificially inflated prices for ready-to-eat cereals, profits for the respondents in excess of those which would have been possible in a competitive market, and a lack of price competition in the ready-to-eat cereal market.[4]

Pursuant to Section 9 of the Federal Trade Commission Act, 15 U.S.C. § 49,[5] as supplemented by § 3.34 of the Commission's

2. Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) provides:

Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

3. The complaint does not allege a conspiracy among the respondents. The complaint, in addition to the shared monopoly theory, also alleges that each respondent individually exercises monopoly powers.

4. The legal sufficiency of the allegations in this admittedly novel complaint are not in issue in this subpoena enforcement proceeding.

5. Section 9 of the Federal Trade Commission Act, 15 U.S.C. § 49, provides in pertinent part:

For the purposes of sections 41 to 46 and 47 to 48 of this title the Commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any person, partnership, or corporation being investigated or proceeded against; and the Commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation. Any member of the Commission may sign subpoenas, and members and examiners of the Commission may administer oaths and affirmations, examine witnesses, and receive evidence.

Such attendance of witnesses, and the production of such documentary evidence, may be required from any place in the United States, at any designated place of hearing. And in case of disobedience to a subpoena the Commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence.

Any of the district courts of the United States within the jurisdiction of which such inquiry is carried on may, in case of contumacy or refusal to obey a subpoena issued to any person, partnership, or corporation, issue an order requiring such person, partnership or corporation to appear before the Commission, or to produce documentary evidence if so ordered, or to give evidence touching the matter in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof.

Rules of Practice, 16 C.F.R. § 3.34,[6] complaint counsel for the FTC applied to the Administrative Law Judge for the issuance of a subpoena *duces tecum* against the four firms, including Kellogg. The Administrative Law Judge issued the subpoena against Kellogg on February 14, 1973. Specification I.10 of the subpoena calls for the quantitative formulas of Kellogg's ready-to-eat cereals,[7] and specification II.10 calls for the annual individual brand costs of each of

6. Section 3.34(b) of the Commission's Rules, 16 C.F.R. § 3.34(b), provides:

> (b) *Subpoenas duces tecum.* (1) Application for issuance of a subpoena requiring a person to appear and depose or testify and to produce specified documents, papers, books, or other physical exhibits at the taking of a deposition, or at a prehearing conference, or at an adjudicative hearing shall be made in writing to the Administrative Law Judge, and shall specify as exactly as possible the material to be produced, showing the general relevancy of the material and the reasonableness of the scope of the subpoena. Any motion to limit or quash such subpoena shall be filed within ten (10) days after service thereof, or within such other time as the Administrative Law Judge may allow.
> (2) Subpoena duces tecum may be used by any party for purposes of discovery or for obtaining documents, papers, books, or other physical exhibits for use in evidence, or for both purposes. When used for discovery purposes, a subpoena may require a person to produce and permit the inspection and copying of nonprivileged documents, papers, books, or other physical exhibits which constitute or contain evidence relevant to the subject matter involved and which are in the possession, custody, or control of such person.

7. Specification I.10 calls for the quantitative formula, and all modifications thereof, for each RTE cereal brand introduced after 1970 and each of the following RTE cereal brands:

  (a) Kellogg's Corn Flakes
  (b) Kellogg's Rice Krispies
  (c) Kellogg's Raisin Bran
  (d) Kellogg's 40% Bran Flakes
  (e) Kellogg's All-Bran
  (f) Kellogg's Pep
  (g) Kellogg's Krumbles
  (h) Kellogg's Sugar Pops
  (i) Kellogg's Sugar Frosted Flakes
  (j) Kellogg's Sugar Smacks
  (k) Kellogg's Special K
  (*l*) Kellogg's·Cocoa Krispies
  (m) Kellogg's OK's
  (n) Kellogg's Stars
  (*o*) Kellogg's Bran Buds

Kellogg's ready-to-eat cereals.[8] On March 16, 1973, Kellogg responded to the issuance of the subpoena by a motion to limit,[9] in which Kellogg argued that it should not be compelled to produce the documents requested in specification II.10 requesting individual brand cost data.[10] Kellogg further stated in its motion that it "intends to object to the production of the documents or tabulations called for by specification II.10 on the grounds that such documents or

  (p) Kellogg's Froot Loops
  (q) Kellogg's Triple Snack
  (r) Kellogg's Apple Jacks
  (s) Kellogg's Corn Flakes with Bananas
  (t) Kellogg's Vanilla Kream Krunch
  (u) Kellogg's Strawberry Kream Krunch
  (v) Kellogg's Orange Kream Krunch
  (w) Kellogg's Product 19
  (x) Kellogg's Puffa Puffa Rice
  (y) Kellogg's Sugar Frosted Mini-Wheats
  (z) Kellogg's Cinnamon Frosted Mini-Wheats
  (z–1) Kellogg's Strawberry Kombos
  (z–2) Kellogg's Chocolate Kombos
  (z–3) Kellogg's Orange Kombos
  (z–4) Kellogg's Rally
(J.A. 21–22).

8. Specification II–10 calls for annual total costs for each Kellogg RTE cereal brand for 1946, 1950, 1954, 1958, 1962, 1966, 1970 and 1972, indicating separately:

  a. the costs of materials (with an identification of the cost of grain);
  b. production labor costs;
  c. other variable production costs;
  d. packaging costs (including an identification of packaging material costs);
  e. distribution costs;
  f. depreciation;
  g. overhead;
  h. advertising;
  i. promotion;
  j. other selling expense.
(J.A. 26–27).

9. Rule 3.34 of the Rules of Practice for the Federal Trade Commission provides that objection to a subpoena issued by the Commission should be in the form of a motion to limit or quash filed within ten days of the service of the subpoena, or within such other time as the Administrative Law Judge may allow.

10. Kellogg did not initially object to specification I.10 requesting quantitative formulas but stated that "several of the specifications (e. g. I.7, I.10) call for the production of documents which Kellogg expects to produce but which Kellogg will argue should not be made available for inspection or copying." (J.A. 59).

information are irrelevant, that compliance would be unreasonably burdensome, and that disclosure of the information involved would do great injury to Kellogg and to competition in the industry." (J.A. 59). In an order dated April 26, 1973, the Administrative Law Judge granted several of Kellogg's requests to limit the subpoena and granted Kellogg ten days to particularize its position on specification II.10 with respect to relevance, burden and confidentiality. (J.A. 75–77).

On May 1, 1973, a prehearing conference was held during which the problem of possible revelation of trade secrets was argued before the Administrative Law Judge. In an order dated May 3, 1973, the Administrative Law Judge accepted the position of Kellogg that trade secrets need be revealed only when necessary to a proper adjudication of the controversy and stated that:

> [T]he disclosure of alleged trade secrets should be required only if those trade secrets are not only relevant to the issues presented by the complaint, but are also necessary for a proper disposition of this controversy. It may be that something less than that called for by the movant in the subpoena is needed and can be supplied by the subpoenaed party without revealing matters that are more sensitive and which are, therefore, maintained as trade secrets. (J.A. 78).

The Administrative Law Judge then ordered counsel for the FTC to submit "a statement demonstrating the need of the information sought as well as its relevance to a proper adjudication of this controversy." Counsel for the subpoenaed parties were directed to respond to the FTC's statement of need. (J.A. 79). On May 11, 1973, the FTC filed a detailed statement of need setting forth the relevance and need for the several categories of documents requested in the subpoena. (J.A. 80–97). The response of Kellogg to the FTC statement of need was filed on June 8, 1973. In its response, Kellogg argued that the FTC had not established a need for the alleged trade secrets and suggested alternatives for the subpoenaed documents which Kellogg contended would fulfill all of the FTC's needs. (J.A. 98–148). The FTC filed a second statement of need on June 6, 1973, in which it amplified the relevance and need for the subpoenaed documents. (J.A. 149–155). On June 29, 1973, the FTC filed its reply to Kellogg's response of June 8, 1973, in which Kellogg had suggested alternatives. In its reply the FTC set forth its reasons why the proposed alternatives and substitutes offered by Kellogg were inadequate for FTC purposes. (J.A. 156–204). Oral argument was held before the Administrative Law Judge on December 10, 1973, during which the Administrative Law Judge heard arguments by all parties in connection with the FTC's need for the subpoenaed documents and the adequacy of Kellogg's offered alternatives. During the oral argument, the Administrative Law Judge requested suggestions from counsel as to the type of protective order which should be entered in connection with an order to produce the alleged "trade secret" information. (J.A. 249). Kellogg took the position that the individual brand cost data, which would reveal the profitability of Kellogg's various brands, should be disclosed only to counsel of record who are "outside" counsel and should not be revealed to any counsel of record who is inside or house counsel for a respondent. (J.A. 250, 252). The Administrative Law Judge responded to Kellogg's argument by saying that in order to secure even-handedness, the subpoenaed document supplied to the FTC should be available to all counsel of record. (J.A. 254). In an order dated February 12, 1974, the Administrative Law Judge ruled:

> As respects cereal formulas . . . I find that complaint counsel have demonstrated the need for such data and will order disclosure. As respects costs and profits by brand, it appears that such information is also necessary. . . .
>
> *   *   *   *   *   *
>
> I turn, next, to the type of disclosure to be given the documents, which respondents must disclose to complaint counsel pursuant to this order. At the December 10, 1973, prehearing conference, various

proposals were made. . . . Under the circumstances it would appear advisable to require respondents seeking limited disclosure to submit their proposals for the type of disclosure warranted and for all counsel to be given an opportunity to respond to such proposals. This order will so provide, after which another order will specify the type of disclosure to be permitted. The attention of counsel is directed to the types of disclosure contained in the February 7, 1973, order (Confidential A and Confidential B). (J.A. 256–57).

In its response to the above quoted Order of February 12, 1974, Kellogg proposed "Confidential B" treatment under the February 7, 1973, order, for both the quantitative formulas called for in specification I.10 and the individual brand cost data called for in specification II.10.· (J.A. 258–263). Confidential B treatment restricts disclosure to counsel of record in the proceeding and their supervisory and clerical employees engaged in the litigation. (J.A. 269). In an order dated March 20, 1974, the Administrative Law Judge adopted Kellogg's proposal and permitted it to designate its subpoenaed quantitative formulas and individual brand cost data by the restrictive Confidential B classification. (J.A. 264–267).

On April 2, 1974, Kellogg filed a request with the Administrative Law Judge for a determination that the February 12, 1974 and March 20, 1974 Orders were appealable to the Federal Trade Commission. (J.A. 271–281). The Administrative Law Judge denied Kellogg's request in an Order dated April 23, 1974. The Order reviewed the proceedings before the Administrative Law Judge to that date and stated:

> By order dated February 12, 1974, respondents' objections to the subpoenas were overruled, complaint counsel having demonstrated the subpoenaed documents were needed in the prosecution of this proceeding. This conclusion was reached only after due consideration had been given not only to the oral arguments of the parties but the written submissions as well. Thus, complaint counsel showed that formulas were needed to ascertain which cereals were basically similar to other cereals. Such information is necessarily tied to the complaint's allegation of artificial differentiation between cereals. With respect to costs, such information was needed as a toll to determine profits which could indicate the existence of monopoly power. Moreover, costs by brand were needed to arrive at meaningful comparisons between brands which are in competition with each other. As I stated at the December 10, 1973 prehearing conference:

>> I see no valid reason for denying costs by brand information. The shared monopoly may or may not exist with respect to the ready-to-eat cereal industry. If it does exist, it may be complaint counsel's argument that it exists because of certain individual brands of respondents. If so, then we get into costs of these individual brands.

>> \*  \*  \*  \*  \*  \*

> The February 12, 1974 order invited respondents to suggest the confidential treatment to be given these classes of documents. In the main, the proposals of respondents were accepted by my order of March 20, 1974. Disclosure was to be limited to counsel of record and their supervisory and clerical employees. . .

>> \*  \*  \*  \*  \*  \*

> . . . Both General Foods and Kellogg argue that the revelation of confidential documents to the other respondents who are their competitors would damage them irreparably and that complaint counsel's need might be satisfied by production of less sensitive data. But these contentions were exhaustively discussed not only in the pleadings of all the parties on complaint counsel's subpoenas but in the oral arguments of May 1 and December 10, 1973. In my order of February 12, 1974, I found that complaint counsel's need had been established. This conclusion, as stated above, was based upon my evaluation of the arguments of

all parties prior thereto concerning complaint counsel's need and the inadequacy of respondents' alternatives.

\* \* \* \* \* \*

Kellogg argues that it was necessary to provide a reason for the ruling but this ignores the extensive position papers of the parties and the oral arguments held at which such reasons were examined, discussed, argued and commented upon. It was stated earlier and frequently that efforts to preserve trade secrets would be maximized but that, in the last analysis, if the information was necessary, confidential treatment would necessarily be lost. (J.A. 298–300).

On May 2, 1974, Kellogg filed an extraordinary appeal with the Federal Trade Commission seeking review of the orders of the Administrative Law Judge. Kellogg argued that the counsel for the FTC had made an insufficient showing of need for disclosure of the trade secrets and that there had been insufficient consideration by the Administrative Law Judge of the alternative documents offered by Kellogg. (J.A. 302–323). On May 29, 1974, the FTC denied Kellogg's application for extraordinary review. (J.A. 334–336).

By a stipulation between the FTC and Kellogg dated June 5, 1974, Kellogg stated that it would continue to assert its objections to specifications I.10 and II.10 and would therefore refuse to produce the quantitive formulas and individual brand cost data. (J.A. 337–342). The Commission, pursuant to Section 9 of the Federal Trade Commission Act, 15 U.S.C. § 49, applied to the district court for enforcement of the two specifications of the subpoena addressed to Kellogg. (J.A. 3–342). The Petition of the FTC included extensive exhibits consisting for the most part, of the pleadings dealing with the subpoena issue in the administrative proceedings. Oral argument was held before the district court on January 3, 1975, during which Kellogg again argued that the FTC had not established the requisite need for disclosure of its trade secrets, that there had been an inadequate consideration of the alternative less

sensitive documents offered by Kellogg to satisfy the FTC's need, and that the protective order entered by the Administrative Law Judge was inadequate to protect Kellogg's trade secrets. The district court, at the conclusion of the oral argument, rendered its decision and signed the order enforcing specifications I.10 and II.10 of the subpoena. (J.A. 407–411). The district court stated:

The court will approve the order presented to the court by, and on behalf of the Commission today.

\* \* \* \* \* \*

But I think the Commission not only has shown need, but relevancy, whichever the test may be, for all of the items sought by the subpoena here.

As to the formulas, I think they are relevant and necessary to prove or disprove the basic similarity between the brands, and to show whether or not the respondents have artificially, or are, in fact, artificially, differentiating their brands.

They are also relevant to show whether certain differences are trivial or unusual for purposes of price analyses or artificial product differentiation.

As to the matter of disclosure of the individual brand costs, it appears to the court that knowledge on the part of the Commission may reveal the existence of monopoly profits based on individual brands which would be hidden by the information disclosed already, according to Mr. Connelly's argument, by a technique of aggregating all of such data.

Now, the complaint in the case at bar does not limit the showing of monopoly profits to the overall industry. The exercise of monopoly power as alleged in the complaint can be shown if the price of one cereal is raised which competitors fail to challenge or which competitors will follow by increasing their comparable brand.

I think the decision and the order of the Administrative Law Judge at the present time is sufficient to protect the trade secrets problem from improper dis-

closure if the respondents, as they will be ordered to do, comply with this subpoena.

However, if new information—and I underscore the word "new"—develops which will show that subsequent orders of the Administrative Law Judge are issued—and I underscore the word "subsequent"—to that which would infringe on the trade secrets and proprietary rights of the respondent, then they will be permitted to come back to the court for further consideration.

So, therefore, the subpoena issued by the agency will be enforced by the court, and the court will sign the order. (J.A. 407–408).

■ There is no question that under the Federal Trade Commission Act, the FTC has broad powers to investigate unfair methods of competition, including antitrust violations. To exercise these broad powers, it is essential that the FTC have adequate subpoena powers to compel both testimony and documents. *Federal Trade Commission v. Tuttle,* 244 F.2d 605 (2d Cir.), *cert. denied,* 354 U.S. 925, 77 S.Ct. 1379, 1 L.Ed.2d 1436 (1957). The parties agree that there is no absolute immunity protecting a party from the disclosure of trade secrets. *Covey Oil Company v. Continental Oil Company,* 340 F.2d 993 (10th Cir.), *cert. denied,* 354 U.S. 925, 77 S.Ct. 1379, 1 L.Ed.2d 1436 (1965); 4 *J. Moore,* Federal Practice § 26–60[4] at 26–243–245 (2d ed. 1974). Kellogg contends that an agency subpoena calling for the production of trade secrets cannot be enforced unless the information sought is relevant and unless the party seeking disclosure can make a clear showing of immediate need for the information requested.[11] It contends further than once the agency has established relevance and immediate need, the subpoenaed party has the burden of coming forth with "a substantial offer of less sensitive information to meet that need."[12] The agency then has the burden of showing that the offer is inadequate to meet its needs. Kellogg takes the position that the FTC has not met the requirement that it show an immediate need for the trade secrets nor has it demonstrated how the information offered by them is inadequate to meet its litigation needs. The FTC on the other hand takes the position that the statutes require only a showing of general relevance to the litigation by the FTC and do not require a showing of need, even where "trade secret" information is sought.[13] We find, however, that we need not decide which standard to

11. Appellants rely upon *Covey Oil Co. v. Continental Oil Co.,* 340 F.2d 993 (10th Cir.), *cert. denied,* 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965), and *Hartley Pen Co. v. United States District Court,* 287 F.2d 324, 330–331 (9th Cir. 1961). These two cases involved trade secrets sought to be discovered in civil actions pursuant to the Federal Rules of Civil Procedure. Appellants also rely upon *F.T.C. v. Tuttle,* 244 F.2d 605 (2d Cir.), *cert. denied,* 354 U.S. 925, 77 S.Ct. 1379, 1 L.Ed.2d 1436 (1957), a subpoena enforcement proceeding brought by the FTC where the Court stated:

> That does not mean that "trade secrets and names of customers" may not be subpoenaed by the Commission in any proceeding or investigation under the Act. They may be subpoenaed in litigation in Federal Courts, if the information is relevant and necessary to the presentation of a case. 244 F.2d 616.

12. Brief for appellant at 23.

13. Appellees rely upon the statutory authorization for judicial enforcement of an agency subpoena found in 15 U.S.C. § 49, note 2, *supra,* and 5 U.S.C. § 555(d) which reads:

> (d) Agency subpoenas authorized by law shall be issued to a party on request and, when required by rules of procedure, on a statement or showing of general relevance and reasonable scope of the evidence sought. On contest, the court shall sustain the subpoena or similar process or demand to the extent that it is found to be in accordance with law. In a proceeding for enforcement, the court shall issue an order requiring the appearance of the witness or the production of the evidence or data within a reasonable time under penalty of punishment for contempt in case of contumacious failure to comply.

The Supreme Court, in *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 217 n.57, 66 S.Ct. 494, 90 L.Ed. 614 (1946), stated that the District Court must consider in an enforcement proceeding whether the documents sought by an administrative subpoena are relevant to the agency's inquiry. The judicial function in this regard is to be considered "neither minor nor ministerial."

apply to enforcement of the FTC subpoena *duces tecum* in this case. We find that both the district court and the Administrative Law Judge applied a standard of both relevancy and need in connection with the subpoena in this case. Our extensive review of the proceedings before the Administrative Law Judge reveals that he accepted Kellogg's position that both relevance and need for the trade secrets had to be shown by the FTC before the subpoenaed trade secrets would be ordered. He ordered the FTC to establish such relevance and need. The FTC filed its statement of need. Kellogg replied and offered alternative and substitute information which it contended would meet the litigation needs of the FTC. The FTC replied with a statement in which it set forth its reasons why the alternative substitute information was inadequate. Oral argument was held and the Administrative Law Judge found that the FTC had demonstrated relevancy and need for the quantitative formulas and the brand cost data sought in specifications I.10 and II.10 of the subpoena. As quoted herein, the district court found that the FTC had shown both relevancy and need in connection with its subpoena in this case. We have reviewed the record and find nothing therein which lends any support to a determination that the district court erred in ordering the enforcement of this subpoena.[14]

## PROTECTIVE ORDER

■ Kellogg also contends that the district court abused its discretion in enforcing the subpoena calling for the production of its trade secrets without issuing an appropriate protective order which would limit the disclosure of the individual brand cost data requested by specification II.10 of the subpoena to outside counsel. The order of the Administrative Law Judge directing Confidential B treatment for the individual

brand cost data allows for disclosure of the cost data to all counsel of record, including inside or house counsel who were counsel of record. Kellogg argues that the individual cost data is a particularly sensitive trade secret and that its disclosure would be of inestimable value to Kellogg's competitors in that it would permit competitors to ascertain the profit margins of each of the individual Kellogg cereal products and thus enable Kellogg's competitors to take advantage of the information either by concentrating their efforts in the areas of those Kellogg products which display the greatest profitability, or by seeking to undermine competition in those Kellogg products which have comparatively low profit margins. The FTC does not question that the quantitative formulas and the individual brand costs are trade secrets and confidential in nature.[15] It does contend however that Kellogg had an opportunity pursuant to the order of the Administrative Law Judge dated February 12, 1974 to request whatever confidential status it deemed appropriate and to suggest to the Administrative Law Judge the scope of the protective order to be entered and that Kellogg requested Confidential B treatment, which request was honored by the Administrative Law Judge. Kellogg replies that the Administrative Law Judge had ruled prior to the issuance of his February 12, 1974 order that any protective order would include disclosure to all counsel of record, and would not be limited to outside counsel and that in his order of February 12, 1974, the Administrative Law Judge limited Kellogg to selection of either Confidential A or Confidential B status.

It is difficult for us, on the basis of this record, to accept the argument of capable Kellogg counsel that they thought that they were limited by the prior orders of the Administrative Law Judge as to the alter-

---

14. A finding by the district court that documents are relevant and necessary to an inquiry by the FTC is essentially factual in nature and cannot be overturned unless the district court's finding is clearly erroneous.

15. Brief of Appellees at 9. See *Graber Mfg. Co. v. Dixon,* 223 F.Supp. 1020, 1022 (D.C.D.C. 1963), where the court recognized that information which would reveal the profitability of a firm's products should not be disclosed to competitors.

natives available to them for a protective order. The February 12, 1974 order of the Administrative Law Judge directed all counsel seeking limited disclosure "to submit their proposals for the type of disclosure warranted and for all counsel to be given an opportunity to respond to such proposals." (J.A. 257). There is nothing in this record which suggests that counsel for Kellogg were restricted in any way as to the alternatives available for a protective order. As the Administrative Law Judge stated in his Order of April 23, 1974:

> Having found the documents necessary, I invited respondents to propose the treatment to be accorded them. Their responses were submitted and accepted in my March 20, 1974, order. If something less could have satisfied complaint counsel's needs, it was incumbent upon respondents to propose it. Not having done so it ill becomes them to complain that I failed to allow some alternative to full disclosure. (J.A. 300).

We see no abuse of discretion in limiting the disclosure of the individual brand cost data to counsel of record. Although this Court has previously commented that there may be some distinction between disclosure of trade secrets to house counsel, and outside counsel,[16] we find no abuse of discretion in refusing to limit such disclosure in this case. In order to protect trade secrets, district courts have required appropriate protection as a precondition to enforcement of FTC subpoenas. *See, e. g., FTC v. St. Regis Paper Co.,* 304 F.2d 731, 732 n. 1 (7th Cir. 1962); *Graber Mfg. Co. v. Dixon,* 223 F.Supp. 1020 (D.C.D.C.1963); *FTC v. Bowman,* 149 F.Supp. 624 (N.D.Ill.), aff'd, 248 F.2d 456 (7th Cir. 1957); *FTC v. Minzies,* 145 F.Supp. 164, 171 (D.Md.1956), aff'd 242 F.2d 81, 84 (4th Cir.), *cert. denied,* 353 U.S. 957, 77 S.Ct. 863, 1 L.Ed.2d 908 (1957). The decision as to the type and scope of any protective order rests within the sound dis-

cretion of the trial judge and must be determined on a case by case basis.[17] There is nothing in this record which would support a determination that the district court abused its discretion by its adoption of the protective order issued by the Administrative Law Judge.

The decision of the district court is affirmed.

*Judgment accordingly.*

---

**16.** *FTC v. Crowther,* 139 U.S.App.D.C. 137, 430 F.2d 510, 515 (1970).

**17.** The same considerations apply to the disclosure of trade secrets in civil cases where discovery is sought pursuant to the Federal Rules of Civil Procedure, *Covey Oil Company v. Con-* *tinental Oil Company,* 340 F.2d 993 (10th Cir.), *cert. denied,* 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965); *Hartley Pen Co. v. United States District Court,* 287 F.2d 324 (9th Cir. 1961).