## FEDERAL TRADE COMMISSION et al.

### v.

**Robert O. ANDERSON, Atlantic Richfield Company, Rawleigh Warner, Mobil Oil Corporation, John F. Bookout, Shell Oil Company, Howard J. Haynes, Standard Oil Company of California, John E. Swearingen, Standard Oil Company (Indiana), Appellants.**

## FEDERAL TRADE COMMISSION

### v.

**Robert O. ANDERSON et al., Maurice F. Granville and Texaco, Inc., Appellants.**

### Nos. 78–1032, 78–1048.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 15, 1979.

Decided Sept. 17, 1979.

Richard H. Porter, Washington, D. C., with whom Robert E. Jordan, III, Washington, D. C., and Edward E. Vaill, Los Angeles, Cal., were on brief, for appellants, Atlantic Richfield Co. and Robert O. Anderson, in No. 78–1032.

Thomas R. Trowbridge, III, New York City, Andrew J. Kilcarr and Vincent Tricarico, Washington, D. C., were on brief, for appellants, Mobil Oil Corp. and Rawleigh Warner, in No. 78–1032.

J. Wallace Adair and James R. Fox, Washington, D. C., were on brief, for appellants, Shell Oil Co. and John F. Bookout, in No. 78–1032.

George A. Sears, San Francisco, Cal., David J. McKean, Rufus E. Wilson, Robert L. Williams, Washington, D. C., were on brief, for appellants, Standard Oil Co. of California and Howard J. Haynes, in No. 78–1032.

James M. Johnstone, Washington, D. C., was on brief, for appellants, Standard Oil Co. (Indiana) and John E. Swearingen, in No. 78–1032.

Milton J. Schubin, New York City, a member of the bar of the Supreme Court of the United States pro hac vice by special leave of Court with whom Robert F. McGinnis, New York City, and Frank H. Strickler, Washington, D. C., and Milton Handler, New York City, were on brief, for appellants, Texaco, Inc. and Maurice F. Granville, in No. 78–1048.

Gerald P. Norton, Deputy Gen. Counsel, Washington, D. C., with whom Michael N. Sohn, Gen. Counsel, W. Dennis Cross, Asst. Gen. Counsel and Joanne L. Levine and William A. Horne, Attys., F. T. C., Washington, D. C., were on brief, for appellees.

Before LEVENTHAL, ROBINSON and ROBB, Circuit Judges.

Opinion for the Court filed by Circuit Judge LEVENTHAL.

Concurring opinion filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

LEVENTHAL, Circuit Judge:

This case is before the court on consolidated appeals filed by the joint respondents and Texaco.[1] The appellants seek review of a district court order granting enforcement of six administrative subpoenas *duces tecum* issued by the Federal Trade Commission. *FTC v. Anderson,* 442 F.Supp. 1118 (D.D.C.1977). The decision of the district court is affirmed in part and remanded in part.

## I. BACKGROUND

The subpoenas arose out of an adjudicative proceeding entitled *In the Matter of*

*Exxon Corp., et al.,* FTC Docket No. 8934. The administrative complaint alleged violations of section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (1976). In sum, the complaint charged the appellant oil companies, along with Exxon Corporation and Gulf Oil Company,[2] with having maintained a noncompetitive market structure and having exercised monopoly power in the refining and distribution of crude oil and petroleum products in the eastern and Gulf Coast regions of the United States.

On November 24, 1976, an administrative law judge (ALJ) issued substantially identical subpoenas *duces tecum* to the appellant companies and their chief executive officers. The information sought related to the companies' organizational structures, record keeping systems and refining operations.

On January 4, 1977, the ALJ, in response to appellants' motions and pursuant to 16 C.F.R. § 3.42(c) (1977), issued a protective order. The ALJ then certified portions of the order for appeal to the entire Commission,[3] which made some modifications in the order. It was in this form that the subpoenas were enforced by the district court.

## II. JUDICIAL ENFORCEMENT OF ADMINISTRATIVE SUBPOENAS

Under section 9 of the FTC Act, 15 U.S.C. § 49 (1976), a district court has jurisdiction to enforce a subpoena issued by the Commission. Although a district court's enforcement function is "neither minor nor ministerial," *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 217 n. 57, 66 S.Ct. 494, 90 L.Ed. 614 (1946), it is a strictly limited one. "[T]he 'very backbone of an administrative agency's effectiveness in carrying out the congressionally mandated duties of industry regulation is the rapid

---

1. "Joint respondents" refers to the appellants in 78–1032: Atlantic Richfield Co., Mobil Oil Corp., Shell Oil Co., Standard Oil Co. of California, Standard Oil Co. of Indiana, and their chief executive officers. "Texaco" refers to Texaco, Inc., *and its chief executive officer, appellants* in 78–1048. "Appellants" refers to all the appellants in this consolidated action.

2. Because Gulf and Exxon elected to comply with their subpoenas, they were not named as parties in the enforcement action.

3. Commission review of interlocutory ALJ orders *is similar to* our review of interlocutory orders of the district court. *Compare* 16 C.F.R. § 3.23(b) (1977) *with* 28 U.S.C. §§ 1291, 1292 (1976).

exercise of the power to investigate. . . .'" *FTC v. Texaco, Inc.,* 180 U.S.App.D.C. 390, 400, 555 F.2d 862, 872 (*en banc*), *cert. denied,* 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072 (1977), *quoting FMC v. Port of Seattle,* 521 F.2d 431, 433 (9th Cir. 1975). This important governmental interest in the expeditious investigation of possible unlawful activity would be undermined if a party could use a subpoena enforcement action to raise the full panoply of objections to an administrative proceeding, *see Oklahoma Press Publishing Co., supra,* 327 U.S. at 213, 66 S.Ct. 494. The enforcement court's function is limited to determining "if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.,* 338 U.S. 632, 652, 70 S.Ct. 357, 369, 94 L.Ed. 401 (1950). Any other defects in the agency's procedures may be considered only in the context of an appeal from the final decision of the agency in the adjudicative proceeding. *FTC v. Atlantic Richfield Co.,* 185 U.S.App.D.C. 229, 240, 567 F.2d 96, 107 (1977).

### III. TEXACO'S CLAIMS

Texaco's principal attack on its subpoena is that the Commission violated its own discovery rules. In approving the subpoenas at issue, the ALJ held that the Commission's rules governing adjudicative subpoenas, 16 C.F.R. § 3.34(b) (1977), authorized discovery of "documents which may be evidentiary or which reasonably may lead to the uncovering or understanding of evidentiary documents." Texaco Appendix at 71–72 n. 51. Texaco contends that the Commission's rules permit post complaint discovery of only those documents that "constitute or contain" relevant evidence.

■ In support of its interpretation of the Commission's discovery rules, Texaco cites an opinion of another Commission ALJ in another FTC matter. Texaco Brief at

35–36. But the fact that another ALJ in an unrelated proceeding had a different interpretation of the regulations establishes nothing more than the existence of a conflict within the Commission regarding the scope of its discovery rules. Texaco has cited nothing to indicate that the Commission has adopted the interpretation of the second ALJ. By implication its issuance of the subpoena to Texaco approving the ALJ's subpoena with modifications not relevant, may be taken as approving the approach of the *Exxon* ALJ.

■ This court is loath to reject an agency's interpretation or application of its rules unless plainly unreasonable or contrary to their clear meaning. Judicial intervention is even more inappropriate in view of the promulgation by the FTC of new rules for discovery in adjudicative proceedings. 43 Fed.Reg. 56862 (Dec. 4, 1978). These regulations explicitly state that discovery may not be denied on the ground that the evidence will be inadmissible at the hearing "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* at 56864 (to be codified in 16 C.F.R. § 3.31(b)(1)).

■ Texaco also argues that the subpoenaed documents are not relevant to the Commission's investigation. Texaco further asserts that adjudicative subpoenas are subject to a more stringent standard of relevancy than investigative subpoenas and that the district court applied the wrong standard in reviewing the Texaco subpoena. We reject these arguments. The test for the relevancy of an administrative subpoena, whether adjudicative or investigative, is whether the information sought is "reasonably relevant" to the agency's inquiry. *Compare United States v. Morton Salt Co.,* 338 U.S. 632, 652, 70 S.Ct. 357, 94 L.Ed. 401 (1950) (investigative subpoena) *with FTC v. Browning,* 140 U.S.App.D.C. 292, 298, 435 F.2d 96, 102 (1970) (adjudicative subpoena).[4]

---

4. Although there have been other verbal formulations of the relevancy standard, *e. g., Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943) (subpoena upheld when the evidence sought "was not plainly incompetent or irrelevant"), the differences between the formulations are chiefly semantical and are of no legal consequence. *SEC*

There is, of course, a difference in that the relevancy of an investigative subpoena is measured against the "general purposes of [the agency's] investigation," *FTC v. Texaco, Inc.,* 180 U.S.App.D.C. 390, 402, 555 F.2d 862, 874 (*en banc*), *cert. denied,* 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072 (1977), while the relevancy of an adjudicative subpoena is measured against the charges specified in the complaint. *Moore Business Forms, Inc. v. FTC,* 113 U.S.App.D.C. 231, 232, 307 F.2d 188, 189 (1962). But both instances are governed by the same standard, reasonable relevance.

■ In the case before us, the district judge applied the proper standard of review, 442 F.Supp. at 1126, and held that the request was both relevant and reasonable. "A finding by the district court that documents are relevant and necessary to an inquiry by the FTC is essentially factual in nature and cannot be overturned unless the district court's finding is clearly erroneous." *FTC v. Lonning,* 176 U.S.App.D.C. 200, 208 n. 14, 539 F.2d 202, 210 n. 14 (1976). We have reviewed the record in this case and find nothing therein which would lend any support to a determination that the district court erred in finding the information sought by the Texaco subpoena relevant to the *Exxon* inquiry.

## IV. PROTECTIVE ORDER

The protective order governs the disclosure of the subpoenaed documents to persons outside the *Exxon* proceeding. Under its terms, the two types of documents, confidential and nonconfidential,[5] are accorded different treatment.

As to confidential documents, the protective order guarantees that the supplying

party is to be provided ten days notice prior to disclosure. There is one exception to this rule, in the case of an official request from Congress or court process, but even when responding to such a request the Commission will not release confidential documents without informing the requesting party that the documents are confidential and should be treated as such. Moreover, the Commission will provide as much advance notice of disclosure of confidential documents as is possible under the circumstances, and specifically will provide ten days notice whenever possible.

As for nonconfidential documents, the order provides no protection; there is no guarantee that the Commission will not disclose the documents to third parties, nor is there a guarantee that the Commission will provide the supplying party advance notice of any such disclosure.

■ Joint respondents have alleged numerous inadequacies in the Commission's protective order.[6] Before dealing with specific objections, we reiterate the limited nature of our task. The formulation of procedural rules is within the discretion of the agency, and our review is limited to determining consistency with governing statutes and the Constitution. *Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 542–43, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978); *FCC v. Schreiber,* 381 U.S. 279, 290–91, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965). The agency's discretion in regard to procedural rules includes discretion in such matters as publicity and disclosure. *FCC v. Schreiber, supra,* 381 U.S. at 291–94, 85 S.Ct. 1459.

---

*v. Arthur Young & Co.,* 190 U.S.App.D.C. 37, 48, 584 F.2d 1018, 1029 (1978).

**5.** Appellants may designate as confidential any document requested by the Commission. If the Commission's complaint counsel disagrees with a particular document's designation, the dispute will be resolved by the presiding ALJ. If either party disagrees with the ALJ's decision, he may appeal it to the entire Commission and, eventually, the court. No party to this action is challenging these procedures.

**6.** Although Texaco's brief deals primarily with the objections discussed in the earlier portions of this opinion, it does state that Texaco joins with the other appellants in objecting to the adequacy of the protective order. Texaco Brief at 5 n. 2. Since the same protective order applies to all the appellants' documents, what we have to say in this portion of our opinion will also apply to Texaco.

## A. Congressional Requests

■ Joint respondents urge that we impose a ten day notice requirement before the disclosure of any documents to Congress. They cite several instances where confidential information conveyed to Congress has been "leaked" to the public. We must decline the invitation to impose a mandatory notice requirement.

In *Exxon Corp. v. FTC,* 191 U.S.App.D.C. 59, 589 F.2d 582 (D.C. Cir. 1978), this court dealt with the issue of Congressional requests for documents in the possession of the FTC. We stated that "[f]or this court on a continuing basis to mandate an enforced delay on the legitimate investigations of Congress whenever these inquiries touched on trade secrets could seriously impede the vital investigatory powers of Congress and would be of highly questionable constitutionality." 191 U.S.App.D.C. at 65, 589 F.2d at 588. We adhere to our decision in *Exxon* and its underlying rationale: "the necessity for courts to refrain from interfering with or delaying the investigatory functions of Congress . . . ." 191 U.S. App.D.C. at 66, 589 F.2d at 589, *see also Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975).

## B. Use of Subpoenaed Documents in Other Proceedings

Of primary concern to the joint respondents is the use of the subpoenaed documents in other administrative proceedings, both before the Commission and other federal agencies.[7] Joint respondents assert that the protective order should have restricted the use of the subpoenaed documents to the *Exxon* case before the Commission. Alternatively, joint respondents argue that the Commission should be required to notify the supplying party prior to a transfer of the documents to anyone outside the *Exxon* staff.

■ This issue is confined, as Judge Flannery recognized, to nonconfidential documents. A supplying party can challenge the disclosure of a confidential document after he has received notice, pursuant to the protective order, that release is imminent.

■ To the extent joint respondents are concerned about the use of subpoenaed documents as evidence in another administrative proceeding, their objections should be raised before the appropriate official presiding in that proceeding. Judicial interference today would permit respondents to avoid submitting the issue of admissibility in the other administrative proceedings "despite the 'long settled rule 'of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *FCC v. Schreiber, supra,* 381 U.S. at 296–97, 85 S.Ct. at 1471, *quoting Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938).

■ The only issue properly before us at this time is the possibility that nonconfidential documents will be used as background information or as leads in other administrative proceedings. We are unable to conclude that the failure to prohibit such use of the subpoenaed documents constitutes a sufficient abuse of discretion to permit us

---

7. *See* FTC Rule 3.43(c), 16 C.F.R. § 3.43(c) (1978):

(c) *Information obtained in investigations.* Any documents, papers, books, physical exhibits, or other materials or information obtained by the Commission under any of its powers may be disclosed by counsel representing the Commission when necessary in connection with adjudicative proceedings and may be offered in evidence by counsel representing the Commission in any such proceeding.

and FTC Rule 3.45(c), 16 C.F.R. § 3.45(c) (1978):

(c) *Release of in camera information.* In camera documents and testimony shall constitute a part of the confidential records of the Commission and shall be subject to the provisions of § 4.11 of this chapter. However, the Commission, on its own motion without notice to any affected party, may make in camera documents and testimony available for inspection, copying, or use by any other government agency.

to substitute our judgment for that of the Commission.

The Supreme Court has rejected an interpretation of the FTC Act "that would allow information to be obtained for only a part of a Commission's functions and would require the Commission to pursue the rest of its duties as if the information did not exist . . . ." *United States v. Morton Salt Co., supra,* 338 U.S. at 649–50, 70 S.Ct. at 367.[8] More recently, in the Hart-Scott-Rodino Antitrust Improvements Act of 1976, Congress approved the sharing of documents by permitting any information obtained by the Justice Department's Antitrust Division pursuant to its civil investigation authority to be used by the rest of the Department[9] and the Federal Trade Commission.[10]

 The Commission acted well within its discretion in refusing to issue a blanket order requiring that notice be given joint respondents before access to the subpoenaed documents is given to persons outside the *Exxon* staff. Such a notice requirement might interfere with agency enforcement functions by forcing disclosure of pending investigations. The Constitution does not require that a respondent in an administrative proceeding be aware of all evidence, information and leads to which opposing counsel might have access.

## C. *Freedom of Information Act Requests*

Joint respondents present a more substantial issue arising out of their fear of disclosure of the subpoenaed documents in response to requests made under the Freedom of Information Act, 5 U.S.C. § 552 (1976) (FOIA).[11] It is the Commission's contention that both confidential and nonconfidential documents are subject to disclosure under the FOIA (unless a particular document falls within a specific FOIA exemption), the only difference in treatment being that the protective order requires ten days notice prior to disclosure of the confidential documents. Joint respondents contend that the subpoenaed documents are not "agency records" and thus not subject to the FOIA.

 The district court refused to determine whether the confidential documents were agency records under the FOIA. It noted that any claims regarding the application of the FOIA to the confidential documents could be litigated once the supplying party received notice of an impending disclosure. 442 F.Supp. at 1124. The judge was correct in concluding that this issue was not ripe for judicial review. As the Third Circuit recognized in a parallel ac-

8. Subsequently, in *United States v. La Salle National Bank,* 437 U.S. 298, 316–18, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), the Supreme Court implicitly approved the transfer of documents obtained by the Internal Revenue Service for a civil investigation to the Justice Department for use in a criminal action.

9. 15 U.S.C. § 1313(c)(2) (1976).

10. 15 U.S.C. § 1313(d)(2) (1976). *See also* 15 U.S.C. § 48 (1976) (agencies, when directed by the President, shall furnish to the FTC all records and papers relating to any corporation subject to the FTC Act) and 44 U.S.C. §§ 3507, 3508(b)(4) (1976) (directing agencies to share information and authorizing transfers of information where transferee agency is empowered to obtain the same information on its own).

11. This fear is by no means frivolous. The reader is referred to the following item:
 *Confidence Blown.* A sad tale from Seattle. Under subpoena three years ago, privately held family business named Wards Cove Packing Co. submitted confidential financial data on its salmon-canning operations to the Federal Trade Commission. Nothing came of the FTC inquiry, but in December, without notifying Wards Cove, the FTC released the data under the Freedom of Information Act to attorneys for fishermen pursuing a civil price-fixing complaint against several canners. "It suddenly came out on the table during deposition of a cannery superintendent," moaned Seattle lawyer Douglas M. Fryer. "He came in the next week and asked for a raise." Financial information is presumptively confidential under FOIA, but the FTC refused to return the material or even to send Fryer free copies of what was furnished the fishermen. Fryer says, "It's all very discouraging. I'll be reluctant to agree to any future submissions to the government without a court order stating specific terms."
 Legal Times of Washington, February 19, 1978 at 3.

tion,[12] the claim that the subpoenaed documents could not be turned over to third parties pursuant to the FOIA requires "further factual development." *Exxon Corp. v. FTC*, 588 F.2d 895, 903 (3rd Cir. 1978). Such a claim should be litigated in the context of a request for specific documents.

As for the nonconfidential documents, the only relief that joint respondents might legitimately claim is that the FTC should not disclose them under a premise of mandatory obligation. Under their contention that documents obtained under subpoena are not "agency records" within FOIA, FTC should disclose them, if at all, only on an exercise of discretion that they should be disclosed.[13]

■ There is undoubted discretion for disclosure. The authority of the FTC includes not only the common law of agency practice and authority, but statutory authority to release documents as the Commission "shall deem expedient in the public interest." [14] The Commission's discretion was confirmed by the opinion in *FTC v. Cinderella Career & Finishing Schools, Inc.*, 131 U.S.App.D.C. 331, 404 F.2d 1308 (1968). We know of no doctrine that compels advance notice prior to discretionary disclosure, although there are recommendations of the Administrative Conference that agencies reconsider their practices.

While joint respondents are not entitled to any notice prior to an agency exercise of discretion to release a nonconfidential docu-

ment, there is a different question whether they are entitled to an assurance or declaration that the FTC will exercise its discretion in determining the issue of release (albeit without notice in advance of action), in view of the fact that the FTC has already indicated that it does not propose to exercise any discretion in the matter, because it believes (erroneously, say appellants) that FOIA makes release mandatory. The question arises whether there is a challenge to "agency action . . . unlawfully withheld" or to "agency action, findings, and conclusions" assailed as "an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (1976).

Before we decide whether a court should issue such a declaration, it is necessary to clarify whether the functional equivalent of such a declaration may have been provided by the submissions of counsel for FTC in this court. That brief is open to the possible interpretation that the Commission is not at present operating under the assumption that all materials fathered by its subpoenas are perforce agency records—an assumption that would require some distinction from the approach of our *Goland* and *Forsham* rulings.[15] A softer interpretation is that FTC appellate counsel do not acquiesce in joint respondents' assertion that the FTC adheres to its pre-*Goland* practice of treating subpoenaed documents as agency records within FOIA, but is awaiting the occasion of an actual FOIA request con-

---

12. *Exxon Corp. v. FTC*, 588 F.2d 895 (3rd Cir. 1978). The action was originally instituted in the United States District Court for the District of Delaware by Exxon and Gulf to obtain a declaratory judgment that the protective order was inadequate. See note 2 *supra*.

13. The point at issue here was not determined by *Chrysler Corp. v. Brown*, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979). In that case, the agency did not suppose that FOIA required disclosure. The Supreme Court held "that Congress did not limit an agency's discretion to disclose information when it enacted the FOIA." Here joint respondents ask that the agency exercise its discretion.

14. 15 U.S.C. § 46(f) (1976). The Commission shall also have power

To make public from time to time such portions of the information obtained by it hereunder, except trade secrets and names of customers, as it shall deem expedient in the public interest; and to make annual and special reports to the Congress and to submit therewith recommendations for additional legislation; and to provide for the publication of its reports and decisions in such form and manner as may be best adapted for public information and use.

15. *Goland v. CIA*, 197 U.S.App.D.C. 25, 607 F.2d 339 (D.C.Cir. 1978); *Forsham v. Califano*, 190 U.S.App.D.C. 231, 587 F.2d 1128 (1978), *cert. granted*, 441 U.S. 942, 99 S.Ct. 2159, 60 L.Ed.2d 1044 (1979).

cerning particular documents.[16] As we have noted, pages 748–749, *supra,* FOIA applications may be governed by considerations of the particular documents, and even documents obtained under subpoena may have other characteristics that bring them within the rubric of agency records.

■ This situation is too confused for an appellate ruling at the present time. The district judge dismissed the claim as to nonconfidential documents on the ground that the agency's action does not violate a specific constitutional or statutory limitation or constitute an abuse of discretion. But the issue is whether and to what extent the FTC has exercised discretion or proposes to exercise discretion. A citizen may be entitled to a court ruling that an agency exercise its discretion even though the court cannot say which way the discretion is to be exercised. On the other hand, the lesser standing of nonconfidential documents is not irrelevant to the issue of the lengths to which a court will go in developing a protective order, or a lesser relief of a declaratory nature.[17]

It suffices for present purposes that the district judge did not focus on the issues in the way they have been presented at the appellate stage. We deem it appropriate to confine ourselves at this time to a remand of the record for further consideration and analysis of the facts and issues, including the current and proposed practice of this agency.

■ The issue arises whether the enforcement of the subpoena should be deferred pending the resolution of this question. We think not. We do not really know how urgent the issue is, whether there will be FOIA requests and how the FTC will respond. Meanwhile the expedition rightly due subpoena enforcement should not be impaired. We think the interest of justice is served by enforcing the subpoena, with only the notice restriction identified as to confidential documents, but retaining jurisdiction, and proceeding on the remand, so that it may be possible in the future, if the court be so advised, to enter an order inserting limitations so as to require that subsequent disclosure by the FTC of nonconfidential documents be based on an exercise of its discretion rather than an assumption of a statutory obligation to disclose.

---

**16.** Under this reading the FTC might be saying that on the particular application it might decide to apply a broad principle of mandatory release.

**17.** We are by no means clear what is meant in this litigation by the term "nonconfidential documents." Joint Respondents' brief refers to the subpoena application of complaint counsel approved November 24, 1976, and states that a "majority" of the documents were designated by respondents as confidential in view of "confidential business information of substantial interest to respondents' competitors." Joint Respondents' Brief at 6. The brief continues:

The subpoenaed documents also contain a wide variety of information which would be of substantial use in formulating discovery requests by parties, other than the FTC now engaged in litigation against respondents.[8]

[8] These documents include, *inter alia,* confidential indices to respondents' files; computer manuals describing categories of data stored by respondents and programs for manipulating such data; reports submitted to the Bureau of Mines not publicly available from the Bureau; and computer reports identifying the types of summaries and analyses of separate corporate financial data periodically issued to management.

. . .

*Id.*

It is not clear whether or to what extent joint respondents could have designated such documents as "confidential," or exactly what documents are referred to as "*private* documents not specifically designated as confidential." Joint Respondents' Brief at 8 (emphasis supplied).

On July 13, 1979, FTC counsel advised the Clerk of the Court by letter as follows:

On April 23, 1979, the administrative law judge entered an order which provides that all documents which are currently being produced by respondent companies in response to subpoenas issued in January 1978 shall be considered confidential and subject to the protective order at issue in this appeal.

On July 23, 1979, joint respondents' counsel informed the Clerk that the April 23 order "does not apply to documents which were produced . . . pursuant to subpoenas issued in November, 1976."

## V. FAILURE TO DISMISS THE INDIVIDUAL RESPONDENTS

To ensure prompt and complete compliance with the subpoenas, the Commission named the chief executive officers of the appellant corporations as parties to the subpoenas. The district judge correctly held that the Commission did not abuse its discretion by naming the officers as parties.

The record is remanded to the district court for further proceedings not inconsistent with this opinion.

*So ordered.*

SPOTTSWOOD W. ROBINSON, III, Circuit Judge, concurring:

In the understanding that we are not directing the District Court to decide presently whether any or all of the nonconfidential documents involved in this subpoena enforcement suit are agency records subject to the Freedom of Information Act, but only to explore whether existing Commission policy is to treat all subpoenaed materials—whatever their character or future disposition—as such agency records and if so whether such a policy contravenes our recent *Goland* and *Forsham* rulings, I join in the court's opinion.