**FEDERAL TRADE COMMISSION,**
Petitioner-Appellee,

v.

**H. R. GIBSON, Sr., et al., Respondents-Appellants.**

No. 71–3080.

United States Court of Appeals,
Fifth Circuit.

May 19, 1972.

Bardwell D. Odum, Dallas, Tex., for respondents-appellants.

Eldon B. Mahon, U. S. Atty., Dallas, Tex., Howard Shapiro, Atty., Ronald M. Dietrich, Gen. Counsel, Nicholas S. Reynolds, Atty., Harold D. Rhynedance, Asst. Gen. Counsel, Federal Trade Comm., Bruce D. Wilson, Chief, Howard Epstein, C. Coleman Bird, Consumer Affairs Section, Antitrust Div., Walker B. Comegys, Acting Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for petitioner-appellee.

Before AINSWORTH, GODBOLD and MORGAN, Circuit Judges.

PER CURIAM:

This is an appeal from an order of the district court requiring that appellants H. R. Gibson, Sr., H. R. Gibson, Jr., and G. P. Gibson comply with three identical subpoenas duces tecum issued by the Federal Trade Commission in connection with an investigation of the pricing policies of the Gibson Products Company and its franchisees. Finding the arguments of appellants to be without merit, we affirm the district court's order.

I.

The subpoenas in question were issued and signed by the Assistant Attorney in Charge of the New Orleans Field Office of the FTC. Appellants contend that the subpoenas were not validly issued in that only members of the Commission may validly sign and issue subpoenas. They argue that power to sign subpoenas has been improperly delegated to lower Commission officials. We disagree.

■■ The authority to issue investigative subpoenas duces tecum was properly and unequivocally delegated to the Assistant Attorneys in charge of the eleven FTC field offices by a Commission order which became effective on July 1, 1970.[1] The Commission's power to make such a delegation of authority is derived from Reorganization Plan No. 4, 1961 U.S.Code Cong. & Admin.News, p. 1358, which provides as follows:

> In addition to its existing authority, the Federal Trade Commission hereinafter referred to as the "Commission", shall have the authority to delegate, by published order or rule, any of its functions to * * * an employee * * *.

Reorganization Plan No. 4 was promulgated by the President pursuant to the authority granted by the Reorganization Act of 1949, 5 U.S.C. § 901 et seq. That Act expressly permits reorganization plans which involve the "authorization of any officer to delegate any of his functions" where appropriate to effectuate any of the Act's purposes. 5 U.S. C. § 903(a) (5).

Appellants are aware of the existence of these statutory materials. However, they contend that the Reorganization Act of 1949 is an unconstitutional delegation of the legislative powers of Congress to the President. Since appellants cite no authorities which even remotely support this proposition, we reject the argument as being frivolous.

Secondly, appellants contend that Reorganization Plan No. 4 does not authorize the delegation of the power to "sign" subpoenas even though it concededly authorizes delegation of the power to "issue" subpoenas. As we understand the argument, it is that the power to "sign" subpoenas is a power which resides with the individual Commissioners and is not possessed by the Commission

as a whole. See 15 U.S.C. § 49. Since Reorganization Plan No. 4 literally authorizes the delegation of the functions of the Commission but not of the individual Commissioners, it is said that it does not authorize delegation of the power to sign subpoenas.

■ We conclude that this asserted distinction is unsupportable. The Commission is explicitly given the power "to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation". 15 U.S.C. § 49. This power was properly delegated to the Assistant Attorneys in charge of the field offices. Since the power to require the attendance of witnesses by subpoena necessarily entails the power to sign the subpoena, we conclude that the power to "sign" subpoenas has also been validly delegated.

Cudahy Packing Company v. Holland, 315 U.S. 357, 62 S.Ct. 651, 86 L.Ed. 895 (1942) relied upon by appellants as supporting this argument was decided prior to the Reorganization Act of 1949. More recently, a delegation of the power to sign subpoenas which is very similar to that involved here has been approved by this court. See United States v. Marshall Durbin & Co., 363 F.2d 1 (5 Cir. 1966).

### II.

■ Appellants contend that the specifications attached to the subpoenas are so broad and indefinite as to violate the Fourth Amendment. Appellants have not, however, specified the particular language in the specifications which they regard as being vague. We have carefully reviewed the specifications. The language does not appear ambiguous or imprecise on its face nor does it leave any doubt about the identity of the

---

1. The order, published at 35 Fed.Reg. 10627 (170) provides, inter alia:
   [t]he commission or any member thereof may issue a subpoena—and the attorneys in charge and *assistant attorneys in charge of the Commission's Field Of-* *fices,* pursuant to delegation of authority by the Commission, without power of re-delegation, *also may issue investigative subpoenas,* * * * (Emphasis supplied.)

documents whose disclosure is sought. We conclude, therefore, that this argument is without merit. See Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946).

### III.

■ Appellants urge that enforcement of the subpoenas should be denied because the information and documents sought are not relevant or material to the investigation of Gibson Products Company which has been authorized by the Commission. By a resolution dated September 17, 1969, the Commission authorized an investigation of appellants' business practices to determine whether appellants may have:

> * * * knowingly induced or received discriminations in price prohibited by Section 2(a) of the amended Clayton Act from various suppliers of milk and dairy products and obtained discriminatory prices from milk and dairy products suppliers through unfair methods of competition in commerce or unfair acts or practices in commerce, and sold milk and dairy products at unreasonably low or below cost prices to the injury of competition in the retail and wholesale sale of milk and dairy products.

We have reviewed the specifications and cannot conclude that the information sought is irrelevant to this investigation. The bulk of the information sought in specification 1 is essential to determine the extent of appellants' actual control over the purchasing and selling practices of their various franchisees, licensees, and subsidiaries. Specification 2 focuses on eight stores and requests the retail prices charged for milk, as well as expenses and net profits or loss on food products broken down by departments. This request is patently relevant to the Commission's investigation of whether Gibson stores have been selling milk and milk products at unreasonably low or below cost prices to the detriment of competition.

### IV.

■ Gibson Products Company does business in 27 states. Notwithstanding this fact, appellants contend that enforcement of the subpoenas should be denied because their activities are not in interstate commerce. See 15 U.S.C. §§ 13, 45. Because a determination of this jurisdictional issue by the federal courts would be premature at this stage of the proceedings, we reject this contention.

■ The role of the federal courts in reviewing the jurisdictional determinations of federal administrative agencies during preliminary agency investigations is a narrowly restricted one. The Supreme Court defined that role in Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 214, 66 S.Ct. 494, 508, 90 L.Ed. 614 (1946) as follows:

> We think, therefore, that the Courts of Appeals were correct in the view that Congress had authorized the Administrator, rather than the District Courts in the first instance, to determine the question of coverage in the preliminary investigation of possibly existing violations; in doing so to exercise his subpoena power for securing evidence on that question, by seeking the production of petitioner's relevant books, records and papers.

The rationale of the *Oklahoma Press* rule is that it allows enforcement of subpoenas where the evidence necessary to establish the interstate nature of the commerce involved is in the possession of the suspected violator and can be secured only by such a subpoena. Under this rule, appellants may not litigate the jurisdictional issue as a defense in a subpoena enforcement proceeding.

### V.

We have carefully considered the numerous other contentions made by appellants and conclude that they are without merit.

Affirmed.