FEDERAL TRADE COMMISSION,
Plaintiff-Appellee,

v.

GIBSON PRODUCTS OF SAN
ANTONIO, INC., et al.,
Defendants-Appellants.

No. 76–1818.

United States Court of Appeals,
Fifth Circuit.

March 17, 1978.

Rehearing Denied May 22, 1978.

---

Bardwell D. Odum, Robert E. Rader, Jr., Dallas, Tex., for defendants-appellants.

John T. Fischbach, F T C, Gerald Harwood, Asst. Gen. Counsel, Mark W. Haase, Robert J. Lewis, Gen. Counsel, Gerald P. Norton, Deputy Gen. Counsel, F T C, Washington, D. C., for plaintiff-appellee.

Before BROWN, Chief Judge, GODBOLD, Circuit Judge, and MEHRTENS[*], District Judge.

JOHN R. BROWN, Chief Judge:

Five Gibson Products corporations[1] appeal the District Court's order enforcing Federal Trade Commission (FTC) subpoenas duces tecum. Despite cries of irrelevance, statutory abuse, and violations of the Commission's rules, we find the subpoenas relevant, within the bounds of the FTC Act, and free of any administrative rule defect. We affirm.

### The Subpoena Arena

The Gibson corporations are part of a chain of over 500 retail department stores located predominantly in Texas, Oklahoma, Kansas, Colorado, and Arkansas. Under the name of "Gibson Discount Centers,"

---

[*] Honorable William O. Mehrtens, Senior District Judge of the Southern District of Florida, sitting by designation.

[1] The five corporations are referred to collectively in this opinion as "Gibson."

these five stores operate in San Antonio, Garland, Richardson, and Plano, Texas and in Shreveport, Louisiana.

In 1975, the FTC issued a complaint against H. R. Gibson, Sr., the founder of the chain, and eleven other individual and corporate respondents.[2] H. R. Gibson, Sr., individually and doing business as Gibson Products Company and The Gibson Trade Shows, *et al.,* No. 9016 (F.T.C., filed Aug. 25, 1975). The five local retailers in this case were not named as respondents.[3] The FTC aimed the complaint primarily at practices resulting from trade shows for wholesale distributors. Representatives from Gibson retailers would come to these shows to examine merchandise and to arrange for purchases. The Commission charges that H. R. Gibson, Sr., and others induced discriminatory allowances from suppliers to participate in these shows in violation of § 5 of the FTC Act, 15 U.S.C.A. § 45. If wholesale suppliers refused to pay, moreover, the Gibson retailers allegedly boycotted the nonparticipating sellers.

After the complaint was filed, FTC Counsel applied to an administrative law judge (ALJ) for the subpoenas duces tecum at issue in this case. In general, the complaint counsel seeks to discover whether the respondents control the retail outlets. Specifically, the subpoenas request that a representative of each local store produce for inspection (i) minutes of shareholder meetings, (ii) minutes of board of directors meetings, (iii) names and addresses of shareholders since the date of incorporation to present, and (iv) records on the transfer of shares since the date of incorporation to present.

2. The other respondents named in the complaint were Herbert R. Gibson, Jr., Gerald Gibson, Belva Gibson, Gibson's Inc., Gibson's Discount Center, Inc., Ideal Travel Agency, Inc., Gibson Warehouse, Inc., Gibson Products Co., Inc., Progressive Brokerage, Inc., Barshell, Inc., and Al Cohen & Associates, Inc.

3. However, two individual respondents, H. R. Gibson, Jr., and Gerald P. Gibson, are president and vice-president, respectively, of all five retailers.

4. At a deposition on June 4, 1976, Herbert R. Gibson, Jr., president of the five appellants,

The ALJ ordered compliance, but he modified the subpoenas to require documents from only 1970 to 1975. After the five corporations refused to obey, the FTC sought enforcement in federal District Court. 15 U.S.C.A. § 49. Following a hearing, the trial court upheld the entire request.

### Mootness

The threshold question is whether this case is moot. Following the District Court's, as well as this Court's, denial of a stay pending appeal, a representative of Gibson provided the documents or summaries of the information as requested. Although Gibson has now substantially complied with these subpoenas and the FTC has indicated it will not pursue further proceedings,[4] we believe the controversy is still alive. If this case were decided in Gibson's favor, relief would be available by an order requiring the FTC to return the subpoenaed documents and to forbid use of the material in the adjudicatory hearing. *See Atlantic Richfield v. FTC,* 5 Cir., 1977, 546 F.2d 646, 650; *FTC v. Browning,* 1970, 140 U.S.App. D.C. 292, 296, 435 F.2d 96, 97 n. 1.[5]

Gibson also argues that the trial court erred in refusing to grant a stay pending appeal. This question, however, is made moot by our decision on the merits of the subpoenas. *Cf. DeSimone v. Linford,* 5 Cir., 1974, 494 F.2d 1186 (appeal from denial of preliminary injunction pending administrative appeal was moot after completion of administrative appeal).

complied with specifications three and four of the subpoenas, but he submitted only handwritten summaries in response to requests one and two. The FTC conceded in its brief it is satisfied with these documents and will not press for further disclosure. Brief of Appellee at 5 n. 3.

5. Although in *Baldridge v. United States,* 5 Cir., 1969, 406 F.2d 526, we held an appeal moot following compliance with an Internal Revenue Summons to produce work papers, this case is not controlling here because it was not clear in *Baldridge* that further relief was available.

## Playing By The Rules

■ Gibson's principal attack on the subpoenas is that the FTC violated its own discovery rules. This Court, of course, will not aid in enforcing a subpoena if the Commission did not adhere to its rules governing the use of such discovery tools. When the FTC publishes rules, the FTC is bound by them. *Pacific Molasses Co. v. FTC*, 5 Cir., 1966, 356 F.2d 386, 389–90.[6]

Gibson argues, in particular, that the complaint counsel did not adequately make the showing required under 16 C.F.R. § 3.33 and § 3.34 before the ALJ, or indeed, failed to make any showing at all. Unlike the Federal Rules of Civil Procedure, which provide for judicial intervention only when a party resists discovery,[7] the FTC Rules stipulate that a party seeking discovery must justify every deposition and subpoena before an ALJ. This requirement, in theory, allows the ALJ to control dilatory tactics by parties who would abuse the discovery process.[8] To justify these subpoenas, the FTC complaint counsel filed the following statement:

> Complaint counsel seek basic corporate information from five Gibson's Discount Centers, not specifically named in the Complaint, but believed to be owned in whole or in part by named Gibson respondents. The information which could be provided in response to the subpoenas is relevant to considerations of direction and control by various individual respondents or various corporate respondents of Gibson's Discount Centers. Discovery on this point is necessary to meet the defenses asserted by counsel for the Gibson respondents. (Tr. 29, 30 and 34). The information requested is unavailable from any other source but it is relevant to demonstrate that respondents are now officers or shareholders of Gibson stores.

> In both the case of the respondent witnesses and the family-owned stores, complaint counsel have attempted to obtain the information voluntarily in accordance with the Administrative Law Judge's direction of June 26, 1975. Respondents' attorneys Bardwell Odum and Robert E. Rader, Jr., met with Complaint counsel in June 1975. Copies of the proposed Specifications for . . . the five Gibson Discount Centers were presented to them. Complaint counsel were advised by letter . . . that none of the requested information would be provided voluntarily.

■ Gibson and the FTC complaint counsel disagree on whether both § 3.33 and § 3.34 apply to these subpoenas. The parties agree that these are adjudicative subpoenas issued after the filing of the complaint, and not investigative subpoenas.[9] But Gibson contends that since the subpoe-

---

**6.** The parties have provided the Court with considerable material on the evolution of the FTC rules for discovery in adjudicative hearings. Although discovery in administrative hearings has traditionally been limited, the current FTC rules, passed in 1967, are more liberal than previous rules. In 1963, for example, the FTC rules required a showing that a deposition would "constitute or contain evidence." FTC Rule § 3.10, 28 Fed.Reg. 7088 (1963). When the Commission changed the rules in 1967, former FTC Chairman Kintner hailed it as recognition by the Commission "[f]or the first time . . . that depositions may be taken for discovery purposes." Kintner, *Recent Changes in Federal Trade Commission Discovery Practice*, 37 ABA Antitrust L.J. 238, 239 (1968). FTC Rules similar to the Federal Rules of Civil Procedure were circulated for comment in 1975, 40 Fed.Reg. 15239–45 (Apr. 4, 1975), but have not yet been adopted. For a review of FTC discovery, see Bennett, *Post-Complaint Discovery in Administrative Proceedings: The FTC as a Case Study*, 1975 Duke L.J. 329.

**7.** F.R.Civ.P. 26(c); *see* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035 (1970).

**8.** Critics argue, however, that applying for every discovery device creates opportunities for delay because it often requires briefs and oral argument. Bennett, note 6, *supra* at 344–46.

**9.** Investigative subpoenas, issued prior to the filing of a complaint, are governed by 16 C.F.R. § 2.7. In general, courts apply a more lenient standard of relevance for investigative than for adjudicative subpoenas. *See e. g., FTC v. Texaco, Inc.*, D.C. Cir., 1977, 555 F.2d 862, 874.

H. R. Gibson, Sr., H. R. Gibson, Jr., and Gerald P. Gibson fought the enforcement of investigative subpoenas in this case. On appeal to this Court, however, we found their arguments without merit. *FTC v. Gibson*, 5 Cir., 1972, 460 F.2d 605.

nas demand that a representative testify as well as produce documents,[10] the FTC must follow the adjudicative rule on depositions, § 3.33,[11] along with the adjudicative rule on subpoenas duces tecum, § 3.34.[12] The FTC complaint counsel, on the other hand, argues that only § 3.34 applies. Neither party has shown us what we think is a definitive Commission statement on what rule or rules are relevant. Our decision, fortunately, does not depend on determining which rules apply.[13] We hold that the complaint counsel complied with the requirements under either § 3.34 or § 3.33.[14]

**10.** The form addressed to each appellant corporation was titled at the top: "Subpoena Duces Tecum," and provided that the corporation should

appear before John Hemrick or any other designated presiding official of the Federal Trade Commission . . . to testify in the matter of Herbert R. Gibson, Sr., individually and doing business as Gibson Products, and the *Gibson Trade Shows, et al.,* Dkt. No. 9016.

At the bottom, there was added:

And you are hereby required to bring with you and produce at said time and place the following books, papers, and documents: described in the specifications which are attached hereto and made a part hereof.

**11.** Section 3.33 provides in pertinent part:

(a) *When justified.* At any time during the course of a proceeding, whether or not issue has been joined, the Administrative Law Judge, in his discretion, may order the taking of a deposition and the production of documents by the deponent. Such order may be entered upon a showing that the deposition is necessary for purposes of discovery, and that such discovery could not be accomplished by voluntary methods. Such order may also be entered in extraordinary circumstances to preserve relevant evidence upon a showing that there is substantial reason to believe that such evidence could not be presented through a witness at the hearing. Insofar as consistent with considerations of fairness and the requirements of due process and the rules in this part, a deposition should not be ordered when it appears that it will result in undue burden *to any other party or in undue delay of the proceeding, and it should not be* ordered to obtain evidence from a person relating to matters with regard to which he is expected to testify at the hearing, or to obtain evidence which there is reason to believe can be presented at a hearing without the need for deposition, or to circumvent the orderly presentation of evidence at the hearing. Depositions may be taken orally or upon written interrogatories and cross-interrogatories before any person having power to administer oaths who may be designated by the hearing examiner.

**12.** Section 3.34 provides in pertinent part:

(b) *Subpoenas duces tecum.* (1) Application for issuance of a subpoena requiring a person to appear and depose or testify and to produce specified documents, papers, books, or other physical exhibits at the taking of a deposition, or at a prehearing conference, or at an adjudicative hearing shall be made in writing to the Administrative Law Judge, and shall specify as exactly as possible the material to be produced, showing the general relevancy of the material and the reasonableness of the scope of the subpoena. Any motion to limit or quash such subpoena shall be filed *within ten (10) days after service thereof, or* within such other time as the Administrative Law Judge may allow.

(2) Subpoenas duces tecum may be used by any party for purposes of discovery or for obtaining documents, papers, books, or other physical exhibits for use in evidence, or for both purposes. When used for discovery purposes, a subpoena may require a person to produce and permit the inspection and copying of nonprivileged documents, papers, books, or *other physical exhibits which* constitute or contain evidence relevant to the subject matter involved and which are in the possession, custody, or control of such person.

**13.** "The salutary and settled rule of administrative law is that the agency, and not the reviewing court, is to be accorded the first opportunity to construe its own regulations." *FTC v. Atlantic Richfield Co.,* D.C. Cir., 567 F.2d 96, 103.

**14.** The controversy over which rules apply results from the ambiguous language of § 3.34(b), which states that subpoenas duces tecum are to be used to require "a person to appear and depose or testify and to produce specified documents . . . at the taking of a deposition. . . ." Gibson interprets this to mean that before a person can be required to produce documents he must be ordered to give a deposition. The FTC argues that the requirement to "appear and depose or testify" is limited to identifying documents; therefore, deposition rules do not apply. Gibson's interpretation of § 3.34, however, derives some support from a comparison with F.R.Civ.P. 45. *See* Lehigh Portland Cement Co., 1968, 73 F.T.C. 1247, 1248 n. 2 ("The scope of § 3.34 is in some respects similar to Rule 45 of the Federal Rules of Civil Procedure"). Under Rule 45, a subpoena duces tecum commanding a nonparty to produce documents but not to appear for a deposition can be quashed. *McLean v. Prudential S. S. Co.,* E.D.Va., 1965, 36 F.R.D. 421, 426;

*Subpoena Duces Tecum: § 3.34*

■ Section 3.34(b) provides two requirements for a subpoena duces tecum. The party applying for the subpoena must show, first, the "general relevancy of the material" and, second, "the reasonableness of the scope of the subpoena." Although the two paragraphs of the FTC's application do not contain the latter phrase, the subpoenas request only four specific items from each corporation, and the FTC explained that the information was unavailable from any other source. Due to the limited nature of the subpoenas, the ALJ would be justified in concluding that the subpoenas were reasonable in scope. In addition, the complaint counsel obviously made a claim of relevance. Counsel explained in the application that the subpoenas were needed to determine the "direction and control" of the stores and to demonstrate that respondents in the complaint were "now officers or shareholders of the Gibson stores."

■ A more difficult question is whether this showing of relevance is sufficient. However, all that a reviewing court requires is that the material sought be "reasonably relevant." *E. g., FTC v. Browning,* 1970, 140 U.S.App.D.C. 292, 298, 435 F.2d 96, 102; *Adams v. FTC,* 8 Cir., 1961, 296 F.2d 861, 866, *cert. denied,* 1962, 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 83. Considering the FTC counsel's statement along with the complaint, *see Moore Business Forms v. FTC,* 1962, 113 U.S.App.D.C. 231, 232, 307 F.2d 188, 189; *Adams v. FTC,* 8 Cir., 1961, 296 F.2d 861, 867, *cert. denied,* 1962, 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 83, we believe this standard is met.

The gist of the complaint concerns the alleged special payments by wholesale distributors to H. R. Gibson, Sr., and others who ran the trade shows, along with the boycott of wholesalers who did not participate in the shows. Although we express no opinion on the merits of the complaint, un-less H. R. Gibson could "direct and control" the purchasing of the retailers, it is unlikely that suppliers would make special payments to participate in the trade shows. Likewise, unless H. R. Gibson could "direct and control" local store buying, he could not prevent retailers from making purchases from suppliers who refused to participate in the shows. A list of shareholders and officers, as well as minutes of board meetings, from the local stores would help resolve who actually controls wholesale buying.

■ Furthermore, although the application states, in part, that the subpoenas are relevant to determine who are "now the officers or shareholders of Gibson stores," the complaint also explains that "particularly since 1959" the respondents have induced discriminatory allowances from suppliers. Thus, more than the current year is relevant in discovering information about the alleged scheme. We, therefore, find no abuse of discretion in the ALJ's decision to allow these subpoena requests for five years of documents. *Adams v. FTC,* 8 Cir., 1961, 296 F.2d 861, 866, *cert. denied,* 1962, 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 83; *FTC v. United States Pipe and Foundry Co.,* D.C. Cir., 1969, 304 F.Supp. 1254, 1259.

*Depositions: § 3.33*

The rule on depositions, like § 3.34, has two pertinent requirements. First, an order for a deposition can be entered only upon a showing that "the deposition is necessary for purposes of discovery," and, second, it must be shown that "such discovery could not be accomplished by voluntary methods."

■ Both these requirements were satisfied. The application explains that after the FTC requested documents in a meeting with Gibson attorneys, Gibson wrote a letter to the Commission refusing to comply.

---

9 C. Wright & A. Miller, Federal Practice and Procedure § 2455 (1971). But F.R.Civ.P. 45 and cases under it deal only with the necessity of testimony to identify the subpoenaed papers, not to give general testimony concerning the subject matter of the subpoenaed documents.

Assuming that to obtain the documents prior to the FTC hearing a witness must also be subpoenaed to authenticate them, the general requirements of § 3.33 on depositions are satisfied by the simple fact of necessity.

In addition, FTC complaint counsel specifically stated that the subpoenas were "necessary" to meet the defenses asserted by the respondents in the complaint at a pretrial conference. At that meeting, an attorney for the respondents claimed that no "buyer" existed in this case.[15] His statement implied that the respondents did not control the buying of the local Gibson stores. We cannot say that the ALJ abused his discretion in approving the deposition based on what appeared necessary in order to learn the facts which bear on or counter this argument.

Gibson also argues that another part of § 3.33(a) applies, which states that a "deposition should not be ordered to obtain evidence from a person relating to matters with regard to which he is expected to testify at the hearing, or to obtain evidence which there is reason to believe can be presented at a hearing without the need for a deposition . . . ." We disagree. As the Commission explained in *Koppers Co., Inc.*, 1968, 74 F.T.C. 1571, 1572–73, § 3.33 allows for both discovery depositions and depositions to preserve relevant evidence. The limiting language in § 3.33(a) pertains only to preserving evidence, not to discovery depositions as are involved in this case.[16] The Commission made it clear that for discovery "[i]t is not the purpose of subsection (a) to deny to respondent advance knowledge of the testimony of . . . witnesses." *Id.* at 1573.[17]

If Gibson's interpretation of § 3.33(a) was adopted, the "sporting theory" of litigation would dominate FTC hearings. Surprise and concealment would be the key trial weapons since each party would be denied advance knowledge of the testimony of the other party's witnesses. The right to cross-examination, moreover, embodied in the Administrative Procedure Act, 5 U.S. C.A. § 556(d), would be a hollow privilege without prior discovery depositions. In any event, it is not clear in this case if those who are deposed will be called as witnesses in the hearing. The complaint counsel should not be stymied in discovery because of the mere possibility that a person will later be a witness. *See* Bennett, note 6, *supra* at 336–39. We realize that the FTC discovery rules are restrictive, but the burden of preventing discovery abuse under the Commission rules is on the ALJ, not on any limitation in § 3.33(a) prohibiting depositions of witnesses.

Gibson has one final argument on alleged rule violations, which is not found in the letter of either § 3.33 or § 3.34. Under what Gibson calls the "*All-State* doctrine," the Commission must always offer an explanation for the failure to obtain information by "less burdensome means." *All-State Industries of North Carolina, Inc.*, 1967, 72 F.T.C. 1020, 1025. Whatever *All-State* said or was thought to say has recently been considerably watered down by the Commission. At first it was thought to stand for the idea that postcomplaint discovery can be restricted if it concerns what should have been learned in the precomplaint investigation. The Commission, however, rejected that idea in a "Supplemental Clarifying Opinion," *All-State Industries of North Carolina, Inc.*, 1968, 74 F.T.C. 1591, and in *Food Fair Stores, Inc.*, 1974, 83 F.T.C. 1578, which established an approach to facilitate discovery "in the light of the issues raised by the complaint," *id.* at 1581, citing a number of post *All-State* decisions

---

**15.** Official Transcript of Proceedings for May 30, 1975, at 29, cited in Application for Subpoenas, R. at 158.

**16.** In its application to the ALJ, the FTC explains that the subpoenas were for the purpose of discovery. R. at 157–58. Gibson apparently agrees, pointing out it its brief that the subpoenas were issued by the FTC for discovery. Brief for the Appellants at 12.

**17.** The Commission further explained in *Koppers* that the distinction between a deposition *to preserve evidence* and a deposition for discovery was a logical extension of paragraph (f)(2) in § 3.33, which allows depositions to constitute evidence only in special cases. The restriction in paragraph (a) which prohibits the taking of depositions for evidence when the deponent is able to testify at trial was merely meant to prohibit the taking of useless depositions to preserve evidence. 74 F.T.C. at 1572–73. *See* Bennett, note 6, *supra* at 336–39.

in which a rigid interpretation of *All-State* was rejected.[18]

■■■ Moreover, we do not face a situation similar to the problem the Commission confronted in *All-State*. Complaint counsel in that case failed to give any reason for requesting "all correspondence relating to purchases, sales and advertising for the period January 1, 1965 to date." 72 F.T.C. at 1024–25. The Commission naturally criticized counsel for making "such broad specifications" without showing that there were "less burdensome means" for obtaining the same information. In contrast to *All-State*, the FTC in Gibson has requested four items from each corporation, at least three of which must be maintained by state law for shareholder inspection.[19] These subpoenas simply do not contain the same "broad specifications." Although there may be cases in which "less burdensome means" must be shown, in this case, because the FTC has explained that the subpoenas are relevant, reasonable, necessary, and that voluntary compliance has failed, no additional hurdles remain. To cap it off, Gibson does not even begin to suggest what less burdensome means would wrench this information out of these obdurate adversaries.

### Other Contentions

■■■ Gibson, in addition, challenges the statutory authority of the Commission to issue the subpoenas, claiming that it is illegal to request records for five years because the FTC is limited to prosecuting currently existing practices. But it is clear that the FTC can issue orders forbidding practices that have been abandoned. *Cotherman v. FTC*, 5 Cir., 1969, 417 F.2d 587, 594–95; *Carter Products, Inc. v. FTC*, 5 Cir., 1963, 323 F.2d 523, 531. Courts also have approved FTC subpoenas covering relatively long periods of time. *E. g., Adams v. FTC*, 8 Cir., 1961, 296 F.2d 861, 867, cert. denied, 1962, 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 83 (nineteen years of information on a conspiracy); *FTC v. Tuttle*, 2 Cir., 1957, 244 F.2d 605, cert. denied, 354 U.S. 925, 77 S.Ct. 1379, 1 L.Ed.2d 1436 (four years of documents on a merger). We hold that, as long as the material is reasonably relevant to the alleged violations, it can be discovered by subpoena, regardless of whether it concerns current or past conduct.

■■■ We also do not believe the subpoenas are overly broad, as Gibson contends, simply because the requests may include confidential information. *See FTC v. Lonning,* 1976, 176 U.S.App.D.C. 200, 208–209, 539 F.2d 202, 210–11; *FTC v. Tuttle,* 2 Cir., 1957, 244 F.2d 605, 616, cert. denied, 354 U.S. 925, 77 S.Ct. 1379, 1 L.Ed.2d 219. Nothing in our opinion, however, prevents the ALJ or the Commission from restricting public disclosure of the information as the law allows.[20] *See, e. g., FTC v. Lonning,* 1976, 176 U.S.App.D.C. 200, 208–209, 539 F.2d 202, 210–11; *Graber Mfg. Co. v. Dixon,* D.C. Cir., 1963, 223 F.Supp. 1020; *FTC v.*

18. The Commission summed it up:

It shall not be a grounds to challenge complaint counsel's discovery to argue that the precomplaint investigation was the proper time to obtain the information sought, if such information is relevant to the issues raised in the pleadings. This is the holding of *All-State,* and reflects the position of the Commission. To the extent that *All-State* is in seeming conflict with the above, it is held confined to its own facts and not further controlling.

We feel this interpretation of *All-State* has also been taken by the federal courts, in an appeal arising from the *Lehigh* case [74 F.T.C. 1589]. In *F. T. C. v. Browning,* [140 U.S.App.D.C. 292] 435 F.2d 96 (1970), the United States Circuit Court of Appeals for the District of Columbia denied that a challenge to postcomplaint discovery could be predicated on the alleged inadequacies of precomplaint investigation. The adequacy of a discovery request is determined by whether the request is reasonable in scope, the material relevant to the issues of the case, and the things sought within the proper bounds of discovery. The court upheld the issuance of the discovery subpoena in question. 83 F.T.C. at 1582 (footnote omitted).

19. Tex.Bus.Corp.Act Ann. art. 2.44.A. (Vernon) (minutes of shareholders' and directors' meetings, along with the names and addresses of shareholders, shall be kept at the registered office or principal place of business). *Accord,* La.Rev.Stat.Ann. § 12:102 (West).

20. The Freedom of Information Act exempts confidential business information from disclosure, 5 USCA § 552(b)(4), and the FTC Act forbids making public "trade secrets and names of customers." 15 U.S.C.A. § 46(f).

*Bowman,* N.D.Ill., 1957, 149 F.Supp. 624, 630–31, aff'd, 7 Cir., 248 F.2d 456.

In conclusion, since the FTC complied with its rules and since in all respects the subpoenas duces tecum are relevant, definite, and within the bounds of statutory authority, enforcement is necessary. *See United States v. Morton Salt Co.,* 1950, 338 U.S. 632, 652, 70 S.Ct. 357, 368, 94 L.Ed. 401, 406; *Genuine Parts Co. v. FTC,* 5 Cir., 1971, 445 F.2d 1382, 1391. Our holding, moreover, is in accord with FTC policy that "to the fullest extent practicable the strategy of surprise and the art of concealment will have no place in a Commission proceeding."[21] The five Gibson corporations cannot keep playing hide-and-seek with the FTC.

AFFIRMED.

## ON PETITION FOR REHEARING

PER CURIAM:

The petition for rehearing, which does not challenge the Court's holding, primarily requests the Court to delete certain words and phrases that might prejudice Gibson. We reiterate that we express no opinion on the merits of the case. None of the language is to be taken as a prejudgment on the merits of the case whether between Gibson and the FTC or between Gibson and other private parties. The comments are principally made to explain the relevance of the subpoenas.

No disparagement is intended of Gibson for having vigorously asserted its contentions that we have examined and overruled.

We do, however, amend the opinion in the first sentence of the second paragraph of footnote nine by deleting the word "this" and substituting "an analogous." We also delete the last sentence of the opinion which reads: "The five Gibson corporations cannot keep playing hide-and-seek with the FTC." In all other respects, the petition for rehearing is DENIED.

21. *All-State Industries of North Carolina, Inc.,* 1967, 72 F.T.C. 1020, 1023.