# Delegation of Cabinet Members' Functions as Ex Officio Members of the Board of Directors of the Solar Energy and Energy Conservation Bank

Under settled principles of administrative law, Cabinet members serving as *ex officio* members of the Board of Directors of the Solar Energy and Energy Conservation Bank may delegate their directorial functions to subordinates, even though the legislation establishing the Bank does not expressly authorize such delegation.

May 21, 1982

## MEMORANDUM OPINION FOR THE GENERAL COUNSEL, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

This responds to your request for our opinion whether *ex officio* members of the Board of Directors of the Solar Energy and Energy Conservation Bank (Bank) are authorized to delegate their functions to Substitute Directors, or whether actions taken by such Substitute Directors pursuant to this delegation are invalid absent subsequent ratification by the statutorily named Directors. For the reasons stated below, we believe that the *ex officio* members may delegate their functions and, accordingly, that the actions taken by their duly appointed delegees are valid.

The Bank was created by Title V of the Energy Security Act of 1980, Pub. L. No. 96–294, 94 Stat. 611, 719, 12 U.S.C. § 3601 (Act) to provide financial encouragement for the installation and use of energy conservation devices and solar energy systems. *See* 12 U.S.C. § 3601 (Supp. V 1981) and H.R. Rep. No. 1104, 98th Cong., 2d Sess. 278–291 (1980) (Conference Report). Established "in the Department of Housing and Urban Development," the Bank has "the same powers as those powers given to the Government National Mortgage Association by [12 U.S.C. § 1723a(a)]." 12 U.S.C. § 3603(a).[1] The General Accounting Office is responsible for auditing the financial transactions of the Bank. 12 U.S.C. § 3603(b).

The Bank is governed by a Board consisting of five *ex officio* Directors: the Secretaries of Housing and Urban Development, Energy, Treasury, Agriculture, and Commerce. The Secretary of HUD chairs the Board, and three Board

---

[1] These powers include the power to enter into and perform contracts with federal and state agencies and private persons; to sue and be sued "in its corporate name"; to lease, purchase and dispose of property; to conduct its business "without regard to any qualification or similar statute" in any state, and to prescribe rules and regulations for the conduct of its business. 12 U.S C § 1723a(a)

members constitute a quorum. *See* 12 U.S.C. § 3604(a), (b) and (c). The President of the Bank is a presidential appointee and serves as Secretary of the Board. *See* 12 U.S.C. §§ 3604(a) and 3605(a). The Board is responsible for establishing the policy and carrying out the functions of the Bank, and it is authorized and directed to issue such regulations as it deems necessary to this end. 12 U.S.C. §§ 3603(e) and 3618. Among other things, the Board is directed to determine levels of financial assistance for various energy projects, 12 U.S.C. § 3608, designate financial institutions for participation in the Bank's programs, 12 U.S.C. § 3611, and establish criteria for approving eligible solar technology and conservation measures. 12 U.S.C. §§ 3612 and 3613. In addition, the Board appoints members of the Bank's two advisory committees and directs the President and other Bank officers in the management of the Bank's affairs. 12 U.S.C. § 3605(c).

In September of 1980 the Board of Directors of the Bank met and adopted by-laws, including a provision permitting the designation of "Substitute Directors" by each of the statutorily named Directors. *See* 24 C.F.R. § 1895.1 (1980) (Section 3.02). Each Substitute Director is to be designated "under the established delegation provisions" of the particular Cabinet agency involved, except that each must occupy a position at least equivalent to that of Assistant Secretary. In the absence of the designating Director, the Substitute Director "will be deemed to be a member of the Board and will have all the powers and duties of the designating Director." We understand from your request that, pursuant to this by-law provision and the applicable delegation authorities of the five Cabinet agencies,[2] Substitute Directors were named, have met on several occasions to conduct the statutory business of the Bank, and have taken a number of actions in the name of the Bank that have not been adopted or confirmed by the statutorily named Directors. The question you have asked us to address is whether the *ex officio* members were authorized to delegate their directorial functions and, accordingly, whether these actions by the Substitute Directors are valid.

The terms of the Act do not provide for delegation of the directorial functions of the *ex officio* Board members. It is clear, however, as a "general proposition" of administrative law, that "merely vesting a duty in [a Cabinet officer] . . . evinces no intention whatsoever to preclude delegation to other officers in the [Cabinet officer's agency] . . . ." *United States* v. *Giordano*, 416 U.S. 505, 513 (1974).[3] *See also* 1 Davis, Administrative Law Treatise, § 3:17 (2d ed. 1978);

---

[2] *See* 42 U.S.C § 3535(d) (Supp. V 1981) (HUD); 42 U.S C. § 7252 (Supp V 1981) (Energy); 31 U.S.C. § 1007 (1976) (Treasury); Section 4 of Reorganization Plan No. 2 of 1953, 67 Stat. 633 (Agriculture), Section 2 of Reorganization Plan No. 5 of 1950, 64 Stat 1263 (Commerce) The HUD delegation provision is typically worded.

> The Secretary may delegate any of his functions, powers, and duties to such officers and employees of the Department as he may designate, may authorize such successive redelegations of such functions, powers, and duties as he may deem desirable, and may make such rules and regulations as may be necessary to carry out his functions, powers, and duties.

42 U.S.C. § 3535(d) (Supp. V 1981)

[3] *Giordano* involved a statutory provision that vested the authority to approve wiretaps under Title III of the Omnibus Crime Control and Safe Streets Act of 1968 in "the Attorney General or any Assistant Attorney General specially designated by the Attorney General." 416 U S at 514. The government argued that delegation to the Attorney General's Executive Assistant was permissible under the Department of Justice's general delegation

*FTC* v. *Gibson,* 460 F. 2d 605 (5th Cir. 1972) (FTC may delegate to field officer power to issue subpoena); *Wirtz* v. *Atlantic States Construction Co.,* 357 F. 2d 442 (5th Cir. 1966) (Secretary of Labor may delegate to regional attorneys authority to institute suit under the Fair Labor Standards Act of 1938). To be sure, the legality of a particular administrative delegation is primarily a function of legislative intent. *See, e.g., Hall* v. *Marshall,* 476 F. Supp. 262, 272 (E.D. Penn. 1979). Nevertheless, as summarized in Sutherland's treatise on statutory construction,

> Where the statute is silent on the question of redelegation and the delegation was to a single executive head, it is almost universally held that the legislature, understanding the impossibility of personal performance, impliedly authorized the delegation of authority to subordinates.

1 C. Sands, Sutherland Statutory Construction, § 4.14 (4th ed. 1972).

The practical necessities underlying this administrative law principle are equally applicable where *ex officio* functions are involved. Indeed, they may be especially applicable. It can be fairly assumed that when Congress selects particular government officials for *ex officio* service, it is because their official duties bear a reasonable relationship to the functions of the body to which they are attached *ex officio.* In so designating political officials who serve individually only for the length of time they remain in their official posts, Congress expects both to take advantage of their agency's specialized knowledge and experience, and to ensure its continuous availability. It is reasonable to conclude in these circumstances that Congress expects the agency head to operate as he would normally in running his agency, and thus to conform to the accepted administrative practice of delegating authority to subordinates for the performance of many of his official duties. An opposite conclusion would often lead to frustration of the legislation establishing the body in question, as well perhaps as other laws, since a rigid requirement that a Cabinet member give his personal attention to every one of his many official functions would be impossible of fulfillment.[4]

In this case, nothing in the legislative history of the Bank's organic act suggests that Congress intended to depart from settled administrative law practice with

---

statute. 28 U S.C § 510 The Court disagreed. While finding no "precise language forbidding delegation," the Court held that the 1968 statute, "fairly read, was intended to limit the power to the Attorney General himself and to any Assistant Attorney General he might designate." *Id* The Court's opinion includes an extensive discussion of the 1968 statute's legislative history, in which it notes in particular Congress' concern that the individual responsible for authorizing wiretaps be responsive to the political process In reaching this conclusion, however, the Court noted, as a general "unexceptionable" proposition, that functions vested in the Attorney General may be delegated unless the matter of delegation has been otherwise "expressly addressed " *Id*.

[4] Congress has sometimes made specific provision for the delegation of *ex officio* functions of Cabinet members and other high government officials serving on boards and advisory groups *See, e.g.,* 40 U S C. § 872 (*ex officio* members of Pennsylvania Avenue Redevelopment Corporation Board of Directors may designate alternates); 45 U S C § 711 (same, United States Railway Association); 16 U.S C § 468 (same, National Trust for Historic Preservation). But for every express provision permitting delegation of directorial functions in statutes creating government corporations, there are several whose boards include Cabinet members serving *ex officio* which contain no express delegation provisions. *See, e g.,* 15 U.S.C. § 714g(a) (Commodity Credit Corporation), 16 U.S.C. § 19(f) (National Park Foundation); 45 U.S.C. § 543(a) (National Railroad Passenger Corporation), 42 U.S C. § 8103 (Neighborhood Reinvestment Corporation), 29 U S C. § 1302(c) (Pension Benefit Guaranty Corporation)

respect to the delegation of *ex officio* board members' authority. Indeed the statutory scheme lends support to the presumption favoring delegation. As in most instances where Congress selects particular government officials for *ex officio* service, the choice of the five Cabinet members in this case was based not on individual personal attributes, but on the contribution Congress believed each one's agency could make to the Bank's operations. *See, e.g.,* Conference Report at 278 ("The Conferees expect the Board will rely on DOE and HUD to determine the reliability, safety, and performance of such new energy conserving improvements. . . ."). We think it reasonable to conclude, therefore, that the general delegation authority available to each of these five Cabinet members is sufficient to accomplish the delegation of functions provided in the Board's by-Laws.[5]

The district court for the District of Columbia has sustained a delegation of *ex officio* authority in a case similar to this one. In *D.C. Federation of Civil Associations* v. *Airis,* 275 F. Supp. 533 (D.D.C. 1967), the court held that *ex officio* members of the National Capital Planning Commission properly appointed alternates to vote and otherwise act in their behalf, in spite of the absence of any specific statutory authorization for the delegation.[6] In so holding, it noted that

> obviously, the *ex officio* members of the Commission are not expected to and cannot devote their entire time to its work. On the contrary, their services as members of the Commission are only one feature of their numerous activities. It has become the usage for the *ex officio* members to appoint alternates to act in their behalf.

275 F. Supp. at 539.

The general rule of private corporate law prohibiting delegation of a Director's voting authority has no relevance in this context. Even if the Bank more closely resembled a private corporation in its structure and functions,[7] the law applicable to it would remain that contained in its own organic statute and in general principles of administrative and constitutional law applicable to similar government entities. *See Rainwater* v. *United States,* 356 U.S. 590 (1958). *See also D'Oench, Duhme & Co.* v. *FDIC,* 315 U.S. 447, 472 (1942) (Jackson, J., concurring). Like the Commodity Credit Corporation, whose status under the False Claims Act was at issue in the *Rainwater* case, the Bank is "simply an administrative device established by Congress for the purpose of carrying out [energy] programs with public funds." 356 U.S. at 592. Unlike the Commodity Credit Corporation, it does not even have "a corporate name . . . to distinguish it

---

[5] Indeed, this delegation probably would be permissible even without the formal adoption by the Board of the "Substitute Director" by-law

[6] The court did not say whether any of the statutorily appointed officials involved—who included the Chief of Engineers of the Army, the Director of the National Park Service, the Federal Highway Administrator, and the Chairmen of the House and Senate District Committees—were otherwise authorized by law to delegate their functions, as are the Cabinet members in this case. *See* note 2, *supra*.

[7] While the Bank's authorities are described in the legislative history as "corporate powers," it is not subject to the Government Corporation Control Act, 31 U.S.C §§ 841–870 (Supp. V 1981). *See* list of wholly owned government corporations in 31 U S.C § 846 (Supp. V 1981), and of mixed-ownership corporations in 31 U S.C § 856 (Supp. V 1981).

from the ordinary government agency." *Id*. Nor is there any suggestion in the Act or its legislative history that Congress intended the Bank to be subject to principles of private corporation law.

Based on applicable administrative law principles permitting delegation by agency heads of *ex officio* functions in the absence of legislative directives to the contrary, we conclude that the directorial functions were properly delegated in this case and that actions taken by the Substitute Directors were not tainted by any improper delegation.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*
